Charles F. Carnesi, Jacob Evseroff, Brooklyn, N.Y., for defendant.

**UNITED STATES of America,**

v.

**Carmine LOMBARDOZZI, Defendant.**

**No. 81 CR 233.**

United States District Court,
E.D. New York.

Oct. 25, 1985.

## OPINION

NICKERSON, District Judge.

The court has before it an alleged violation of probation by defendant Carmine Lombardozzi. On defendant's plea of guilty to a violation of the Internal Revenue Code the court sentenced him on January 1, 1982 to three years imprisonment to serve six months with the balance on probation.

One condition of probation was that defendant "refrain from violation of any law (federal, state or local)." The government charges that while on probation defendant engaged in loansharking and in promoting gambling contrary to New York law. The court finds insufficient evidence to sustain the charge of loansharking.

The evidence at the hearing as to the promotion of gambling consisted of the tes-

timony of a New York City police undercover officer, who in July and August 1983, met with defendant and taped the conversations. New York City police officers rented a store on Bath Avenue in Brooklyn for the purpose of operating a purportedly illegal gambling business. At the front of the store the officers sold soft drinks, yogurt and the like. In the rear they installed slot machines and "Joker Poker" machines.

An undercover officer, using the name of Michael Simon, first met defendant at a restaurant in Brooklyn on July 29, 1983. As the tape reveals, the officer explained to defendant that the store was being opened, that "the front's going to be legitimate setup," and that the back, entry to which could only be gained by operating a buzzer system, contained three "Joker Poker payoffs" and three slot machines. Defendant said: "Here's what you're gonna do; here's what our arrangement will be, I'm your partner and I put you in that store and that's where you stand.... Anybody wants to know, go see Carmine Lombardozzi."

When the officer asked defendant to "put the word out for people to come in," he replied "[n]aturally—it's my place." He also told the officer "I'm gonna put it on record that you're with me," and advised him that if "[a]nybody comes in there and tries to (expletive deleted) shake you or anything," the officer should say "you go see that guy, that's his (expletive deleted) joint; I'm only a (expletive deleted) operator here; whatever he tells me to do, I do." Finally defendant gave assurances that he would "take all the weight off you," and had the officer repeat the store's address.

The second taped conversation took place in the same restaurant on August 18, 1983. The officer reminded defendant of the store with the slot machines and Joker Poker machines and said that a man named Spero was coming to the store. Defendant responded: "Tell Spero I'm your partner. I told you that. Didn't I tell you that from the start. Just tell him to see Carmine.

Whatever Carmine wants me to do, this is what I do."

When the officer asked if defendant could suggest to his "friends" to come "in back and gamble a little," defendant answered "I'll see what I can do for you, Mike, on that basis." He then called over Frank Balsamello and instructed him: "I want you to go over to his place. He's got a game room.... Stop in there and take a view of this place and see what we could do, send anybody over there."

The officer then explained the situation to Balsamello, who later visited the store on several occasions and received money from the officer.

On September 13, 1985 defendant was acquitted in New York Supreme Court, Kings County, not only of other charges but also of the very charge which is the basis for the allegation of violation of probation.

Under Section 225.05 of the New York Penal Law

A person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity.

Section 225.00 defines the terms used in the laws establishing gambling offenses. Subdivision 4 of that section provides that a person "advances gambling" when, acting other than as a player, he "engages in conduct which materially aids any form of gambling activity." The subsection then recites in part, that "[s]uch conduct includes but is not limited to" conduct directed toward a variety of ends including the "creation or establishment" of the particular game, the maintenance of the premises, the "solicitation or inducement of persons to participate therein," or "any other phase of its operation."

The fact that defendant was acquitted of a charge of violation of Section 225.05 is not conclusive. The burden of proof was greater in the criminal case. *United States v. Chambers,* 429 F.2d 410, 411 (3d Cir.1970); *United States ex rel. Carrasquillo v. Thomas,* 527 F.Supp. 1105, 1109

(S.D.N.Y.1981), *aff'd,* 677 F.2d 225 (2d Cir. 1982).

While the *Thomas* case requires no more than proof of the violation by a preponderance of the evidence, this court finds that the government has established by clear and convincing evidence that defendant violated that section. By asking Balsamello to view the store and see what "we" could do to send people there, defendant "solicited" someone to "participate" in illegal gambling. Moreover, conduct encouraging the continuance of a gambling site by assuring the proprietor of "protection" appears to this court to be "materially" aiding gambling activity. The examples given in subdivision 4 of Section 225.00 make it clear that the "material" aid need not be in the form of funds or physical assets.

Even if Section 225.05 were to be read to require the acceptance of money, as defendant contends, he would be guilty under Section 105.20 of conspiracy to promote gambling. Defendant agreed with Balsamello as well as with the police officer to help the enterprise. Balsamello actually received money. It seems hardly likely that defendant intended to do the officer a cost free favor. Even assuming defendant had merely charitable instincts and no personal gain in mind, it would be fatuous to believe that such benevolent feelings extended not to Balsamello but to the officer.

Moreover, even if defendant had supposed that his sole coconspirator was the officer, he would be held guilty. New York law was not always thus. Before 1965 New York required that there be a corrupt compact between two or more persons. But in 1965 Section 105.30 of the Penal Law became effective and provided in substance that it is no defense to a prosecution for conspiracy that one or more of the coconspirators could not be guilty. The New York Court of Appeals held that after the adoption of this law a defendant may be guilty of conspiracy even though his only coconspirator feigned agreement and had no criminal intent. *People v. Teeter,* 47 N.Y.2d 1002, 420 N.Y.S.2d 217, 394 N.E.2d 286 (1979); *People v. Schwimmer,* 47 N.Y.2d 1004, 420 N.Y.S.2d 218, 394 N.E.2d 288 (1979); *People v. Villetto,* 47 N.Y.2d 1006, 420 N.Y.S.2d 219, 394 N.E.2d 288 (1979).

Here defendant conspired with the officer to help the gambling establishment by becoming a "partner," offering protection, and asking Balsamello to promote business. The fact that the officer had no criminal intent makes no difference.

For much the same reasons defendant was guilty of aiding and abetting the commission of the crime of promoting gambling. Section 20.00 of the Penal Law makes it a crime intentionally to aid someone else to engage in criminal conduct, and the active encouragement of the continuation of a gambling site plainly constitutes such aiding of another person. Section 20.-05 of the Penal Law provides that it is no defense that that other person lacked "the mental state required for the commission" of the offense.

The court has found no New York cases construing this section, and construes it in the same spirit as that used by the New York courts in interpreting the conspiracy sections.

The court finds that defendant violated the conditions of his probation.